IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG PHI PHAM,<br><br>    Plaintiff,<br><br>    v.<br><br>MOISES BECERRA, et al.,<br><br>    Defendants. | Case No. 23-cv-01288-CRB<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER** |

Seven years after Petitioner Hung Phi Pham ("Pham") was released from jail following his first (and only) conviction—after he started a family, maintained a steady job, and applied for U.S. citizenship—the government has finally decided to detain and deport him. Respondents argue that, under the federal mandatory detention statute, 8 U.S.C. § 1226(c), the government must detain Pham without a bond hearing until his removal. Pham brings a petition for a writ of habeas corpus and this motion for a temporary restraining order, arguing that due process entitles him to a bond hearing.

Because the Court has jurisdiction over Pham's petition and Pham is likely to succeed on the merits of his due process challenge, the Court GRANTS a temporary restraining order. The government is ordered to provide Pham with a bond hearing, at which the government will bear the burden of proof, within five days.

**I.    BACKGROUND**

    **A.    Pham's Background and Criminal Conviction**

Pham was born in Vietnam and came to the United States on a nonimmigrant student visa in 2008. Pham Decl. (dkt. 1-1) ¶¶ 1–3. In 2010, Pham became a lawful permanent resident. Id. ¶ 5.

1  In February 2013, while a student at UC Santa Cruz, he went out with other
2  students from the UC Santa Cruz Vietnamese Student Association in San Jose. Id. ¶ 8.
3  After drinking and going to a nightclub, the group returned to a friend's house, where
4  several individuals, including Pham, slept in the same bed. Id. During that night, Pham
5  groped and digitally penetrated another member of the group without her consent. Id.;
6  Palakiko Decl. Ex. D at DHS 23. When the victim confronted Pham about his actions, he
7  confessed and apologized. Palakiko Decl. Ex. D at DHS 23. In March 2015, Pham was
8  convicted in Santa Clara County Superior Court for violation of California Penal Code
9  § 289(e) (Sexual Penetration When the Victim was Intoxicated or Anesthetized) and
10 sentenced to 364 days in county jail. Id. at DHS 7. Pham served six months in jail and
11 was released in August 2015. Id. ¶¶ 14–15.

### B. Pham's Marriage and Naturalization Application

Following his release, Pham completed three years of probation and registered as a sex offender in California. Id. ¶¶ 21–22. Due to his conviction, he was not able to work as a pharmacist, the career he had been going to school for; instead, he became a handyman and a construction worker. Id. ¶¶ 23, 29. He completed rehabilitation and alcohol abuse programs. Id. ¶¶ 18–19; Wille Decl. (dkt. 1-4) Exs. CC, DD, FF. In 2018, he met Han Nguyen Khanh Duong, a U.S. citizen, at her grandmother's birthday party. Pham Decl. ¶ 24; Duong Decl. (dkt. 1-2) ¶ 3. They married in January 2020, and in August 2020, they had their first child together. Pham Decl. ¶ 26.

In June 2021, Pham applied for U.S. citizenship. Pham Decl. ¶ 27. On his naturalization application, he disclosed his current address and his conviction. Id. ¶ 28; Wille Decl. Ex. A. In April 2022, Pham appeared at the USCIS office in Santa Clara for an interview in support of his naturalization application. Pham Decl. ¶ 28; Wille Decl. Ex. C. The USCIS officer informed Pham that a decision was still pending on his naturalization application. Pham Decl. ¶ 28.

On January 19, 2023, nine months after Pham's interview, more than a year and a half after he submitted his naturalization application, and seven years after his release from

1  criminal custody, ICE officers arrived at Pham's home and detained him. Id. ¶ 30;
2  Palakiko Decl. ¶ 10. Duong, who answered the door, was nine months pregnant. Pham
3  Decl. ¶ 30; Duong Decl. ¶ 10. Pham and Duong's second child was born while Pham
4  remained in ICE detention, and Pham has yet to meet him. Duong Decl. ¶ 11.

### C. Detention and Petition

Pham was processed in San Jose and eventually moved to Golden State Annex, a private detention facility in McFarland, California, where he continues to be held. Pham Decl. ¶ 30; Ballout Decl. (dkt. 1-3) ¶ 5. Pham was denied the opportunity to post bond pending removal. Ballout Decl. ¶ 5. Soon thereafter, ICE served Pham with a Notice to Appear for Removal Proceedings. Palakiko Decl. ¶ 10. The Notice to Appear charges that Pham is deportable because his conviction under Cal. Penal Code § 289(e) is an aggravated felony under the INA. See 8 U.S.C. § 1101(a)(43)(A); see also 8 U.S.C. § 1227(a)(2)(A)(iii).

In January 2023, Pham asked the immigration judge ("IJ") to release him from custody while he pursued relief from removal, based on his marriage to Duong, a U.S. citizen. Ballout Decl. ¶ 6. In February, the IJ determined that under 8 U.S.C. § 1226(c), Pham was not entitled to a bond hearing. Palakiko Decl. Ex. G. Pham appealed this determination. Id. ¶ 9. In February, Pham also denied the substantive charge of removability. Id. ¶ 11. On March 16, the IJ sustained the charge of removability against Pham, and Pham brought this petition and motion shortly thereafter. Id.

## II. LEGAL STANDARD

A TRO is an "extraordinary remedy" that should be awarded only upon a clear showing that the plaintiff (or in this case, the petitioner) is entitled to such relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the petitioner's favor; and (4) that an injunction is in the public interest. See id. at 20. Alternatively, the moving party must demonstrate that "serious questions going to the merits were raised," that "the

3

balance of hardships tips sharply in the [petitioner's] favor," and that the other two Winter elements are satisfied. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The "likelihood of success on the merits 'is the most important' Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)).

### III. DISCUSSION

Pham brings an as-applied constitutional challenge to his continued detention under § 1226(c) without a bond hearing. Pet. (dkt. 1); Mot. (dkt. 4). The government makes two main arguments in response: First, that the Court does not have jurisdiction over Pham's petition, which should have been brought in the Eastern District; and second, that Pham is nonetheless not demonstrated a likelihood of success on the merits on his due process claim.

#### A. Jurisdiction

The government relies on Rumsfeld v. Padilla, 542 U.S. 426 (2004), and Ninth Circuit cases citing it with approval in the immigration context, see, e.g., Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020), to argue that Pham should have followed the default "district-of-confinement" rule and filed his action in the Eastern District, and thus the Court lacks jurisdiction over his petition. Opp'n (dkt. 15) at 5–15. In line with the consensus of courts in this district that have addressed this precise issue,[1] the Court has jurisdiction and may grant relief pursuant to 28 U.S.C. § 2241.

---

[1] See, e.g., Ameen v. Jennings, No. 22-CV-00140-WHO, 2022 WL 1157900 (N.D. Cal. Apr. 19, 2022); Henriquez v. Garland, No. 5:22-CV-00869-EJD, 2022 WL 2132919 (N.D. Cal. June 14, 2022), appeal dismissed, No. 22-16205, 2022 WL 18587903 (9th Cir. Dec. 28, 2022); Domingo v. Barr, No. 20-CV-06089-YGR, 2020 WL 5798238 (N.D. Cal. Sept. 29, 2020); Doe v. Barr, No. 20-CV-02263-RMI, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020); Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022 (N.D. Cal. May 19, 2020); Saravia v. Sessions, 280 F. Supp. 3d 1168 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); Singh v. Barr, No. 20-CV-02346-VKD, 2020 WL 2512410 (N.D. Cal. May 15, 2020); Ortuno v. Jennings, No. 20-CV-02064-MMC, 2020 WL 2218965 (N.D. Cal. May 7, 2020); Montoya Echeverria v. Barr, No. 20-CV-02917-JSC, 2020 WL 2759731 (N.D. Cal. May 27, 2020); Salesh P. v. Kaiser, No. 22-CV-03018-DMR, 2022 WL 17082375 (N.D. Cal. Nov. 18, 2022); Meneses v. Jennings, No. 21-CV-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021).

4

In Padilla, the Supreme Court addressed whether the Southern District of New York had jurisdiction over a habeas petition brought by an enemy combatant detained on a naval brig in South Carolina. 542 U.S. at 432. Padilla named as respondents the president, the secretary of defense, and the commander of the naval brig where Padilla was being held. Id. The Court held that "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." Id. at 435.[2] Because "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions,' . . . jurisdiction over Padilla's habeas petition lies in the Southern District only if it has jurisdiction over" the commander of the naval brig where Padilla was being held, who "exercises day-to-day control over Padilla's physical custody." Id. at 439, 442 (quoting 28 U.S.C. § 2241(a)). Because the proper respondent was in South Carolina, the Southern District of New York did not have jurisdiction over Padilla's petition. Id. at 446.

Critically, Padilla did not address the question, raised in this case, of which court has jurisdiction when the detainee is confined "in a facility run by an entity other than the federal government," Saravia, 280 F. Supp. 3d at 1185, and it is not at all clear that Padilla requires that the default district-of-confinement rule applies. The Ninth Circuit cases citing Padilla with approval in the immigration context also do not address this question. See, e.g., Lopez-Marroquin v. Barr, 955 F.3d 759, 759–60 (9th Cir. 2020) (three-paragraph opinion construing an emergency motion to remand as a habeas petition and transferring it to the Southern District of California under Padilla); see also Ameen, 2022 WL 1157900, at *3 (addressing unreported Ninth Circuit cases citing Padilla in the immigration context and concluding that "[n]one of those cases addresses why a particular jurisdiction was appropriate, much less a situation where the habeas petitioner is being held in a private

---

[2] In a footnote, the Padilla Court "left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." Id. at 435 n.8. No controlling authority has since resolved that issue. See Saravia, 280 F. Supp. 3d at 1184 & n.8.

facility operated under a government contract").[3]  Thus, there is no controlling authority on the jurisdictional question presented here.

Pham is being held at Golden State Annex, a private detention facility located in McFarland, California, which is in the Eastern District.  The question of who is the "warden" of such a facility—and thus the correct respondent under Padilla—is not a straightforward "district-of-confinement" question, unless the correct respondent is also located in the Eastern District.[4]  The government appears to argue that the correct respondent(s) would be Acting Assistant Field Office Director (AAFOD) Nancy Gonzalez, or Gonzalez's supervisor, Deputy Field Office Director Orestes L. Cruz, not San Francisco Field Office Director Moises Becerra, the current respondent.  See Opp'n at 3–4, 15 ("Petitioner makes no meaningful allegations against the FOD."); see also Gonzalez Decl. (dkt. 15-2).  Gonzalez, who is based in the Eastern District, is "responsible for providing support to the Deputy Field Office Director ('DFOD') and Field Office Director ('FOD') in managing operations and procedures of enforcement and removal activity throughout the Bakersfield Area of Responsibility ('AOR'), which includes but is not limited to providing oversight and supervision of Supervisory Detention and Deportation Officers

---

[3] The other Northern District cases the government cites applying Padilla in the immigration context are similarly unpersuasive.  The vast majority of these cases address habeas petitions brought by detainees held outside the state of California, presenting none of the jurisdictional complications here.  See, e.g., Sankara v. Barr, No. 19-CV-06306-SI, 2020 WL 9395225 (N.D. Cal. Feb. 10, 2020) (Western District of New York); Mehmood v. United States Att'y Gen., No. 19-CV-06422-YGR (PR), 2019 WL 12106917 (N.D. Cal. Nov. 22, 2019) (Southern District of Florida).  The cases that do address transfers from this District to the Eastern District either do not decide the jurisdictional question head-on, instead exercising that court's discretion to initiate the transfer, or decide the jurisdictional question in a short opinion that does not address the issues the parties raise here.  See, e.g., Basheer v. Jennings, No. 18-CV-02383 NC (PR), 2018 WL 11312001 (N.D. Cal. Apr. 24, 2018); Alvarado Henriquez v. Sessions, No. 18-CV-06647-JST (PR), 2018 WL 11312483 (N.D. Cal. Nov. 27, 2018).

[4] The government argued in its papers and at the hearing on this motion that holding that this Court has jurisdiction over Pham would "allow habeas petitioners to file duplicative petitions and forum-shop between two districts."  Opp'n at 11.  Putting aside the fact that neither duplicative petitions nor forum shopping are at issue here, the government's argument presumes that the Eastern District would have jurisdiction over any petition brought by a detainee at Golden State Annex under Padilla, but that, in turn, depends on who the correct respondent for such a petition is and whether the Eastern District has jurisdiction over them.  See Padilla, 542 U.S. at 442.

6

1   and their staff who maintain the docket management of ICE detainees at [Golden State
2   Annex]." Gonzalez Decl. ¶ 1. DFOD Cruz, also based in the Eastern District, is
3   responsible for "direction and oversight of ICE immigration enforcement operations within
4   the California counties of Fresno, Inyo, Kern, Kings, Madera, Mariposa, Merced, Mono
5   and Tulare,"[5] and Cruz "directly reports to FOD Moises Becerra," a respondent in this
6   case. Id. ¶ 6.

7   This argument is unconvincing. Both AAFOD Gonzalez and DFOD Cruz report to
8   FOD Becerra; thus, Becerra, and not Gonzalez or Cruz, exercises control over Pham's
9   physical custody. See, e.g., Ameen, 2022 WL 1157900, at *4 ("Given the clear chain of
10  command, respondents' suggestion that a lower-level ICE office – one who reports to
11  [Becerra] but is located in a district office within the Eastern District of California – is not
12  a sufficient substitute."); Meneses, 2021 WL 4804293, at *2 (holding that the San
13  Francisco FOD is the proper respondent despite the government's arguments "suggesting
14  that a better candidate might be the assistant field director . . . assigned to the Bakersfield
15  Sub-Office" because "any habeas relief ordered by the Court would necessarily be directed
16  to the San Francisco office"). Judge Chhabria's sensible rule articulated in Saravia v.
17  Sessions, that "a petitioner held in federal detention in a non-federal facility pursuant to a
18  contract should sue the federal official most directly responsible for overseeing that
19  contract facility," 280 F. Supp. 3d at 1185, is in accord. Gonzalez's declaration does not
20  persuade the Court that she, or DFOD Cruz, is the "federal official most directly
21  responsible for overseeing" Golden State Annex. See Gonzalez Decl. ¶ 1 (declaring that
22  Gonzalez is "responsible for providing support" to Cruz and Becerra "in managing
23  operations and procedures of enforcement and removal activity . . . which includes but is
24  not limited to providing oversight and supervision of" Golden State Annex).

25  Based on the current record, the Court is not persuaded that Gonzalez and Cruz are
26  in fact the correct respondents under Padilla. Because Becerra is based in the Northern

---

[5] Golden State Annex is in Kern County.

7

District, the Court has jurisdiction over him and Pham's petition. The Court therefore addresses the merits of Pham's motion.

### B.  Due Process Analysis

Pham argues that he is likely to succeed in his argument that due process entitles him to a bond hearing even though the INA's mandatory detention provision, 8 U.S.C. § 1226(c), does not. The Court agrees.

#### 1.  Legal Framework

8 U.S.C. § 1226 sets forth whether the government may detain or release noncitizens during removal proceedings. Under the "default rule" of § 1226(a), the government "may release" or "may continue to detain" an arrested noncitizen "pending a decision" on their removal. 8 U.S.C. § 1226(a); see also Nielsen v. Preap, 139 S. Ct. 954, 958 (2019) ("Aliens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided."). Section 1226(c), titled "Detention of Criminal Aliens," instructs that the government "shall take into custody any alien" who has committed various types of criminal offenses "when the alien is released."[6]

The Supreme Court has addressed the meaning, application, and constitutionality of § 1226(c) piecemeal. In Demore v. Kim, the Court held that § 1226(c) was constitutional on its face. 538 U.S. 510, 530 (2003); but see id. at 532–33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); see also Jennings v. Rodriguez, 138 S. Ct. 830, 847 (2018) (holding that the text of 1226(c) does not allow for the imposition of periodic bond

---

[6] In this motion, the parties do not dispute that Pham's conviction is an "aggravated felony" rendering him deportable under 8 U.S.C. 1227(a)(2)(A)(iii) and he is detained subject to § 1226(c), not § 1226(a). See also 8 U.S.C. § 1101(a)(43)(A) (defining "aggravated felony" as "murder, rape, or sexual abuse of a minor"). Accordingly, the Court operates on the assumption that Pham has no statutory entitlement to a bond hearing. See Preap, 139 S. Ct. at 960, 968.

1  hearings during detention pending a removal decision).  In Nielsen v. Preap, the Court held
2  that § 1226(c) does not require bond hearings even for noncitizens (like Pham) whose
3  removal proceedings (and detention) commenced long after their release from criminal
4  custody. 139 S. Ct. at 959.  But while declining to apply the canon of constitutional
5  avoidance to its statutory holding, the Preap Court explicitly reserved the type of as-
6  applied constitutional challenge that Pham now brings.  See Preap, 139 S. Ct. at 972 ("Our
7  decision today on the meaning of that statutory provision does not foreclose as-applied
8  challenges—that is, constitutional challenges to applications of the statute as we have now
9  read it."); see also id. at 982 (Breyer, J., dissenting) (describing the Court's holding as
10 "creat[ing] serious constitutional problems" because it "would give the Secretary authority
11 to arrest and detain aliens years after they have committed a minor crime and then hold
12 them without a bail hearing for months or years").

13     The due process protection "applies to "all 'persons' within the United States,
14 including aliens, whether their presence here is lawful, unlawful, temporary, or
15 permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Detention violates due
16 process absent "adequate procedural protections" or "special justification[s]" sufficient to
17 outweigh the "'constitutionally protected interest in avoiding physical restraint.'"
18 Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).
19 Courts apply three factors from Mathews v. Eldridge, 424 U.S. 319 (1976), to determine
20 what the "specific dictates of due process" require in a particular case: "First, the private
21 interest that will be affected by the official action; second, the risk of an erroneous
22 deprivation of such interest through the procedures used, and the probable value, if any, of
23 additional or substitute procedural safeguards; and finally, the Government's interest,
24 including the function involved and the fiscal and administrative burdens that the
25 additional or substitute procedural requirements would entail." 424 U.S. at 335.  While as-
26 applied due process challenges to mandatory detention under 8 U.S.C. 1226(c) are
27 common, challenges like this one—not to the length of the detention but the length of time
28 between release from criminal custody and detention—are rare.  See, e.g., Perera v.

9

1  Jennings, No. 21-CV-04136-BLF, 2021 WL 2400981, at *3 (N.D. Cal. June 11, 2021).

## 2. Likelihood of Success on the Merits

With this backdrop, we decide whether Pham's is likely to succeed in his argument that § 1226(c), as applied to him, violates due process.

First, the Court addresses the due process interest at stake. Mathews, 424 U.S. at 335. As Judge Freeman held in Perera, "the main private interest at stake in the instant matter is Perera's '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint.'" Perera, 2021 WL 2400981, at *4 (quoting Zadvydas, 533 U.S. at 690). This interest persists no matter the length of his detention. See id. (quoting Rajnish v. Jennings, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020)).

The government argues that Pham has no cognizable liberty interest in a bond hearing because he "cannot identify a liberty interest in immigration detention following release from criminal custody." Opp'n at 17. The government primarily relies on dicta from a divided en banc opinion from the First Circuit reasoning that "the length of time an alien managed to avoid detention post-release"[7] does not affect the risk-of-flight calculus inherent in § 1226(c), because "[t]he incentive to flee peaks once the criminal [noncitizen] knows that ICE has decided to come after him." Castaneda v. Souza, 810 F.3d 15, 60–61 (1st Cir. 2015). But this is precisely why Preap—decided after Castaneda—left as-applied challenges open for petitioners like Pham. Let's take as true Castaneda's assumption that, for most noncitizens detained after a long period of release from criminal custody, the risk of flight is still just as high as it was immediately after release. There are still reasons to think that this is not true for Pham, who has a U.S. citizen wife and two U.S. citizen children, including one he has never met, and who, through his marriage, has a means to fight his deportation. See Ballout Decl. ¶¶ 12–17. Thus, for a petitioner like Pham, the

---

[7] The Court notes that Pham appears to have done nothing to "avoid" detention post-release. Pham did everything California law requires of him, and if the government had wanted to remove Pham seven years ago, it could easily have obtained all the information it needed to do so.

risk-of-flight calculus is not as clear as the First Circuit assumed, and its reasoning certainly should not negate his clear liberty interest in freedom from detention without any process after seven years as a productive member of his community.

The government's efforts to distinguish Perera are similarly unpersuasive. The government makes much of the fact that Perera had been convicted of a federal, not state, crime and thus his whereabouts were "continuously known" to the federal government, who nonetheless waited six years to detain him. Perera, 2021 WL 2400981, at *3. Pham, by contrast, was convicted of a state crime, served his sentence in county jail, and complied with state probation and registration requirements. The government thus argues that because "USCIS notified ICE of Petitioner's sex offender status on September 6, 2022," that Pham could not establish a liberty interest, because ICE only knew that he was deportable a few months before they detained him. Opp'n at 19 (citing Palakiko Decl. ¶ 8 & Ex. B).

First, Perera's finding of a liberty interest did not depend on the length of time the federal government knew of Perera's conviction and failed to initiate removal proceedings. See Perera, 2021 WL 2400981, at *4. Second, as a factual matter, we cannot determine on this record when the government was first notified about Pham's conviction. While the government indicates that USCIS sent a referral to ICE in September 2022 and hints that California officials did not give notice when Pham was set to be released from state custody, there is no evidence in the record that such notice was not given. See Opp'n at 23 ("To give just one example, state and local officials sometimes rebuff the Government's request that they give notice when a criminal alien will be released." (quoting Preap, 139 S. Ct. at 968)). It thus cannot be established that "Petitioner did not come to ICE's attention until seven years after he was released from state custody." Id. Third, even taking the government's assertions as true, it does not follow that Pham's liberty interest is diminished because the government waited only more than a year,[8] rather than seven years,

---

[8] It is also not clear why USCIS waited until September 2022 to notify ICE about Pham's prior conviction, when his naturalization application had been pending since June 2021 and he went in

11

to detain him, particularly where Pham's information has been readily available to the federal government through California's sex offender registry since 2015. Pham's liberty interest in "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint," does not depend on the government's diligence (or lack thereof) in detaining him. Zadvydas, 533 U.S. at 690.

Having found that Pham has a liberty interest, we assess the other Mathews factors—the risk of erroneous deprivation, and the government's interest—to determine whether he is entitled to a bond hearing. Mathews, 424 U.S. at 335. In accord with Judge Freeman's conclusion in Perera, the other Mathews factors "unquestionably weigh in favor of" Pham. Perera, 20201 WL 2400981, at *4.

The risk of erroneous deprivation is significant. While it is not for the Court to decide the ultimate question of whether Pham should be granted bond, Pham has put forth persuasive evidence that he does not pose a danger or present a flight risk. He has completed post-conviction programs, including an alcohol abuse program; he is, by all accounts, happily married with two U.S. citizen children; he has a steady job and meaningful ties to his community. But because the IJ found that he could not consider Pham's situation because § 1226(c) does not entitle him to a bond hearing, Pham has received no process at all on the question of his dangerousness or risk of flight. See Palakiko Decl. Ex. G; see also Perera, 2021 WL 2400981, at *4. Given this context, the risk of erroneous deprivation is high.[9]

Finally, the government's interest in detention absent a bond hearing is low. The government certainly has an interest in the "efficient administration of immigration laws" and the administrative burdens inherent in additional procedural protections. Landon v.

---

for an interview in April 2022.

[9] The government's argument that there is no risk of erroneous deprivation because Pham is subject to mandatory detention without bond under § 1226(c), see Opp'n at 21, is circular. Preap explicitly left open as-applied due process challenges to mandatory detention under § 1226(c). Preap, 139 S. Ct. at 972. It follows that successful due process challenges to mandatory detention would require additional process—i.e., more than none—such as a bond hearing where the government must show that continued detention is justified. See infra Section III.C.

Plasencia, 459 U.S. 21, 34 (1982).  But "the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with [a] bond hearing, not whether the government may continue to detain him" at all.  Lopez Reyes v. Bonnar, 362 F. Supp. 3d 765, 777 (N.D. Cal. 2019).  "Requiring the government to provide [Pham] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk."  Perera, 2021 WL 2400981, at *5.

Accordingly, balancing the Mathews factors, Pham is likely to succeed on the merits of his due process claim. Because Pham is likely to establish that § 1226(c) is unconstitutional as applied to him, his continued detention without a bond hearing would violate due process.

### 3. Other Winter Factors

The other Winter factors—irreparable harm, the balance of equities, and the public interest—are also satisfied here.  Of course, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).  But even putting that aside, Pham faces concrete and irreparable harms from continued detention without a bond hearing—including the inability to be with his family, provide economic and emotional support to them, and bond with his second child, who he has yet to meet.  See, e.g., Martinez Franco v. Jennings, 456 F. Supp. 3d 1193, 1200 (N.D. Cal. 2020).  The balance of the equities tips in Pham's favor because the administrative burden of a bond hearing is minimal when weighed against these severe hardships.  See Hernandez v. Sessions, 872 F.3d 976, 995–96 (9th Cir. 2017).  And further, the imposition of a TRO serves the public interest because it could prevent the "unnecessary detention" of Pham, should an IJ determine that he is "neither dangerous nor enough of a flight risk to require detention without bond." Id. at 996.

### C. Burden of Proof

Having decided that due process requires a bond hearing, we must now decide who

13

bears the burden of proof.  Pham, relying primarily on Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), argues that the government should bear the burden of proving by clear and convincing evidence that further detention is warranted.  Mot. at 20–22.  The government argues that Rodriguez-Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022) has called Singh's holding on this point into question, and that under the analysis dictated by Rodriguez-Diaz, Pham should bear the burden of proof.  Opp'n at 24–25.

Pham once again has the better of the argument.  Rodriguez-Diaz considered whether a second bond hearing was constitutionally required in the § 1226(a) context, and specifically declined to opine on whether Singh remains good law in § 1226(c) cases.  See Rodriguez-Diaz, 53 F.4th at 1202 & n.4.  Absent controlling authority to the contrary, the reasoning of Singh and its holding remains applicable to § 1226(c) cases, like this one, where there is a "substantial liberty interest at stake."  Singh, 638 F.3d at 1204; Perera, 2021 WL 2400981, at *6; see also Doe v. Garland, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding that the government shall bear the burden in a constitutionally required bond hearing in the § 1226(c) context post-Rodriguez-Diaz).

### D. Security

Finally, Pham requests that, because "Rule 65(c) invests the district court with discretion as to the amount of security required, if any," Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted), and courts "routinely exercise their discretion to require no security in cases brought by incarcerated people," Perera, 2021 WL 2400981, at *6, the Court should do the same here.  The Court grants this request.

### IV. CONCLUSION

For the foregoing reasons, Pham's motion for a temporary restraining order is GRANTED.  The government is enjoined from continuing to detain Pham for more than five days after the date of this order without a bond hearing, at which the government bears the burden of justifying Pham's detention by clear and convincing evidence.

14

1    This temporary restraining order is issued after notice and hearing on March 30,
2  2023.  The Court sets the hearing for the preliminary injunction on April 21, 2023, or such
3  later date as the parties may request.  The provisions set forth herein shall expire at 5:00
4  p.m. on April 21, 2023, unless before then the government consents to an extension, or the
5  Court, for good cause, orders an extension.  The government may file an opposition, if any,
6  to the issuance of a preliminary injunction no later than April 7, 2023.  Pham may file a
7  reply, if any, no later than April 14, 2023.

**IT IS SO ORDERED.**

Dated: March 31, 2023



CHARLES R. BREYER
United States District Judge

15