IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG PHI PHAM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MOISES BECERRA, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-01288-CRB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

In March 2023, Petitioner Hung Phi Pham (Pham), was detained at Golden State Annex pending removal proceedings pursuant to 8 U.S.C. § 1226(c), a federal mandatory detention statute for aggravated felony convictions. The Government refused to provide Pham with a bond hearing, so Pham filed a petition for writ of habeas corpus and a motion for a temporary restraining order, arguing that due process entitled him to a bond hearing. See Pet. (dkt. 1). This Court granted a temporary restraining order (TRO) enjoining the Department of Homeland Security and Respondents from continuing to detain Pham without a bond hearing. Order Granting TRO (dkt. 20). Thereafter, an Immigration Judge (IJ) ordered Pham to be released on a minimum bond of $1500. See Stipulation (dkt. 23).

Following Pham's posting of bond and release from custody, the Government filed a return requesting that this Court dismiss Pham's habeas petition. See Return (dkt. 27). Pham then filed a traverse requesting that this Court affirm that a bond hearing was required by due process under the Fifth Amendment and to permanently enjoin the Government from detaining Pham without a bond hearing. See Traverse (dkt. 28). The Court GRANTS Pham's petition for habeas corpus and permanently enjoins Defendants from detaining Pham pursuant to 8 U.S.C. § 1226(c) based on criminal convictions that

pre-date the Court's order, for more than five days without a bond hearing, at which the Government bears the burden of justifying Pham's detention by clear and convincing evidence.

## I. BACKGROUND

### A. Pham's Background and Criminal Conviction

Pham was born in Vietnam and came to the United States on a nonimmigrant student visa in 2008. Pham Decl. (dkt. 1-1) ¶¶ 1–3. In 2010, Pham became a lawful permanent resident. Id. ¶ 5

In February 2013, while he was a student at University of California, Santa Cruz, Pham sexually molested another student. See id. ¶ 8. Pham was convicted in Santa Clara County Superior Court for violation of California Penal Code § 289(e) (Sexual Penetration When the Victim was Intoxicated or Anesthetized) in March 2015 and sentenced to 364 days in county jail. Palakiko Decl. (dkt. 15-1) ¶¶ 6–7. Pham served six months in jail and was released in August 2015. Pham Decl. ¶ 15.

Following his release, Pham completed three years of probation and registered as a sex offender in California. Id. ¶¶ 18, 22. Due to the difficulty of pursuing a career as a pharmacist—the career he had been attending school for—with a felony conviction, Pham worked in construction for his uncle. Id. ¶¶ 13, 23. He completed rehabilitation and alcohol abuse programs. Id. ¶ 18. In January 2020, he married, Han Nguyen Khanh Duong (Duong), a U.S. citizen, and in August 2020, they had their first child together. Id. ¶ 26.

### B. Pham's Naturalization

In June 2021, Pham applied for U.S. citizenship. Id. ¶ 27. On his naturalization application, he included his current address and disclosed his conviction. Id. ¶ 28. In April 2022, Pham appeared at the United States Citizenship and Immigration Services (USCIS) office in Santa Clara for an interview in support of his naturalization application. Id. There, the USCIS officer informed Pham that a decision was still pending on his application. Id.

2

On January 19, 2023—nine months after Pham's interview, more than a year and a half after he submitted his naturalization application, and seven years after his release from criminal custody—United States and Customs (ICE) officers removed Pham from his home and took him into custody at a private detention facility. Id. ¶ 30. Duong, who answered the door, was nine months pregnant with their second child. Id. Pham and Duong's second child was subsequently born while Pham remained in ICE detention. Id. ¶ 36.

### C. Detention and TRO

Pham was detained at Golden State Annex, a private detention facility in McFarland, California, pending his removal proceedings. Id. ¶ 30; Ballout Decl. (dkt. 1-3) ¶ 5. In February 2023, an IJ determined that under 8 U.S.C. § 1226(c), Pham was not entitled to a bond hearing. See Ballout Decl. ¶ 5. Pham appealed this determination. See Palakiko Decl. Ex. H. On March 16, three months after Pham's detention began, the IJ sustained the charge of removability against Pham. Id. Pham thereafter filed a petition for writ of habeas corpus and a motion for a TRO, arguing that due process entitled him to bond hearing. See Pet. This Court granted the TRO on March 31, 2023, ordering the Government to provide Pham with a bond hearing within five days, at which the Government would bear the burden of proof. See TRO at 1.

### D. Developments Since the TRO

On April 5, 2023, an IJ conducted a bond hearing and ordered Pham to be released on a minimum bond in the amount of $1,500. See Stipulation (dkt. 23). ICE did not appeal that bond order to the Board of Immigration of Appeals (BIA). See Suppl. Pham. Decl. (dkt. 28) ¶ 2. The Court granted the parties' stipulation to vacate the briefing schedule for the preliminary injunction, set a briefing schedule for the underlying habeas petition, and extended the temporary restraining order until the petition is adjudicated. Id.

The Government now reraises arguments that the Court considered and rejected in the TRO order.

3

## II. JURISDICTION

Before the Court can address the merits of Pham's habeas petition, the Court must first consider whether this Court has habeas jurisdiction over the matter. Federal district courts are limited to granting habeas relief "within their respective jurisdictions," which means that the district court must have jurisdiction over the plaintiff's custodian. 28 U.S.C. § 2241(a); see Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004). The Government contends that under Rumsfeld v. Padilla's district-of-confinement rule, this Court does not have jurisdiction because Pham was detained in the Eastern District of California. The Government also argues that even if the rule does not apply, the proper respondent and custodian is similarly outside of this Court's jurisdiction. The Court will first address why Padilla's district-of-confinement rule does not apply to this case and will next address why Pham has named the proper respondent.

### A. The District-of-Confinement Rule

In Padilla, the Supreme Court considered whether the Southern District of New York had jurisdiction over a habeas petition brought by a U.S. citizen detained in military custody in South Carolina. Padilla, 542 U.S. at 435. The Court held that the "default rule" in habeas challenges to present physical confinement is the "district of confinement rule"—that is, "the proper respondent is the warden of the facility where the prisoner is being held." Id. at 446. Applying that rule, the Court concluded that the proper respondent in Padilla's case was the commander of the naval brig who "exercis[ed] day-to-day control over [his] custody." Id. Because the commander of the naval brig was in South Carolina, the Court concluded that the Southern District of New York did not have jurisdiction over Padilla's petition.

However, Padilla did not establish a bright-line district-of-confinement rule. The Court expressly declined to decide the proper respondent in the immigration context—like the case at bar.[1] Id. at 435 n.8. Nor did Padilla address which court has jurisdiction when

---

[1] The Government argues that the district-of-confinement rule should govern, especially when neither this Court, nor the "other district-court decisions that the TRO cited . . . discuss[] the actual text of the habeas statute . . . ." Return at 6. First, the Court disputes this as a factual matter as both

4

the detainee is confined in a private facility, as opposed to the public facility at issue in Padilla.[2]

The Government argues otherwise, citing a slew of brief and unpublished cases that are not relevant to the precise facts of this case. The facts here involve a noncitizen petitioner detained in a private facility located in a different district from where the custodian responsible for the facility is located. See TRO at 5. While many of the cases cited involve detainees held in private facilities, there is no indication that the detainees were in a different district from where the respondent was located, much less a dispute as to who the proper respondent should be, as there is in this case. The cases consist of three-paragraph opinions construing appeals from an IJ or the BIA as habeas petitions, and then transferring those petitions to the district where the petitioner was detained—many of them arising as motions of release because of the COVID-19 pandemic. See Chavez v. Barr, No. 20-70461, 2020 WL 13017244 (9th Cir. Apr. 30, 2020); Calderon v. Barr, No.19-72548, 2020 WL 13033204 (9th Cir. Apr. 30, 2020); Birru v. Barr, No. 19-72758, 2020 WL 12182460 (9th Cir. Apr. 30, 2020).

Similarly, in Lopez v. Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020), the Ninth Circuit construed an emergency motion to remand in a noncitizen's appeal from the BIA as a petition for a writ of habeas corpus. The court transferred the case to where the

---

the Court and the cases relied upon, cite to the habeas statute. Second, the Government, itself, fails to engage with the statutory text but instead relies primarily on Padilla, a case that explicitly declined to address the rule in the immigration context.

[2] The Government claims that Padilla reaffirmed the Ahrens v. Clark, 335 U.S. 188 (1948) district-of-confinement rule for "all habeas petitions." Return at 10. This assertion is misguided given that Padilla expressly declined to address habeas jurisdiction for noncitizen detainees. Further, as the Government concedes, Ahrens was overruled by Braden v. 30th Judicial Cir. Ct., 410 U.S. 484 (1973). Braden held that a court has habeas jurisdiction so long as it has jurisdiction over the respondent. Id. at 1129-1130. Padilla narrowed Braden's holding to apply to challenges to "future confinement." Padilla, 542 U.S. at 442. Because Pham is currently out of custody on bail, his habeas petition concerns his future confinement as well. Thus, Pham is under the gambit of Braden.
    Even if Braden is not controlling here, the Supreme Court has not established a bright-line district-of-confinement rule that is applicable to this case. Neither Padilla nor Ahrens address whether the district-of-confinement rule should govern when the noncitizen detainee is detained in a private facility that is located in a different district from where the respondent is based.

1 petitioner was being detained, citing to Padilla.  Id. at 760.  However, the court did not

2 address the jurisdictional question presented in this case.  Id.

3        It is beside the point that some of these cases involve "detainees being held at non-

4 federal facilities" because that is only one factual component of this case.  Return at 6.  To

5 advance their position, the Government would need to cite authority that actually decides

6 the jurisdictional issue as opposed to cases that merely illustrate the court exercising its

7 discretion to initiate a transfer.  Accordingly, in line with the consensus of courts in this

8 district that have addressed this precise issue, the district-of-confinement rule does not

9 apply to this case.[3]

### B. The Proper Respondent

Pham's habeas corpus petition names San Francisco Field Office Director (FOD) Moises Becerra, who is based in the Northern District of California, as the respondent.  The Government argues that Acting Assistant Field Office Director (AAFOD) Nancy Gonzalez, who is based in the Eastern District of California, is the proper respondent.  For reasons that will be set forth below, the Court concludes that Pham is correct.

Before Pham was released on bond following this Court's TRO order, Pham was detained at Golden State Annex, a private detention facility located in McFarland, California, which is in the Eastern District of California.  Becerra is the FOD of ICE's San Francisco Field Office, which has authority over Pham's custody and over the Golden State Annex.  See Pet. ¶¶ 11-12.  FOD Becerra's responsibilities include the management and director of all Enforcement Removal Operations (ERO) and law enforcement

---

[3] See, e.g., Ameen v. Jennings, No. 22-CV-00140-WHO, 2022 WL 1157900 (N.D. Cal. Apr. 19, 2022); Henriquez v. Garland, No. 5:22-CV-00869-EJD, 2022 WL 2132919 (N.D. Cal. June 14, 2022), appeal dismissed, No. 22-16205, 2022 WL 18587903 (9th Cir. Dec. 28, 2022); Domingo v. Barr, No. 20-CV-06089-YGR, 2020 WL 5798238 (N.D. Cal. Sept. 29, 2020); Doe v. Barr, No. 20-CV-02263-RMI, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020); Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022 (N.D. Cal. May 19, 2020); Saravia v. Sessions, 280 F. Supp. 3d 1168 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); Singh v. Barr, No. 20-CV-02346-VKD, 2020 WL 2512410 (N.D. Cal. May 15, 2020); Ortuno v. Jennings, No. 20-CV-02064-MMC, 2020 WL 2218965 (N.D. Cal. May 7, 2020); Montoya Echeverria v. Barr, No. 20-CV-02917-JSC, 2020 WL 2759731 (N.D. Cal. May 27, 2020); Salesh P. v. Kaiser, No. 22-CV-03018-DMR, 2022 WL 17082375 (N.D. Cal. Nov. 18, 2022); Meneses v. Jennings, No. 21-CV-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021).

1    operations located within the geographic boundaries of the San Francisco Area of
2    Responsibility.  Gonzalez Decl. (dkt. 15-2) ¶ 7.  FOD Becerra oversees Deputy Field
3    Office Director (DFOD) Orestes L. Cruz, who is based in the Eastern District and is
4    responsible for providing discretion and oversight of ICE immigration enforcement
5    operations within the California counties of Fresno, Inyo, Kern, Madera, Mariposa,
6    Merced, Mono, and Tulare.  Id.  DFOD Cruz is the direct supervisor of AAFOD Nancy
7    Gonzalez, who is based in the Eastern District and is assigned to the Bakersfield Sub-
8    Office within ERO San Francisco, which is responsible for oversight of noncitizens
9    detained at Golden State Annex.  Id.  AAFOD Gonzalez is responsible for providing
10   support to FOD Becerra and DFOD Cruz.  Id.

11   Given that both DFOD Cruz and AAFOD Gonzalez report to FOD Becerra, it is
12   FOD Becerra that exercises control over Pham's custody.  See, e.g., Ameen v. Jennings,
13   No. 22-CV-00140-WHO, 2022 WL 1157900, at *4 (N.D. Cal. Apr. 19, 2022), appeal
14   dismissed, No. 22-15912, 2023 WL 9054160 (9th Cir. Sept. 1, 2023) ("Given the clear
15   chain of command, respondents' suggestion that a lower-level ICE office – one who
16   reports to [Becerra] but is located in a district office within the Eastern District of
17   California – is not a sufficient substitute."); Meneses, 2021 WL 4804293, at *2 (holding
18   that the San Francisco FOD is the proper respondent despite the government's arguments
19   "suggesting that a better candidate might be the assistant field director . . . assigned to the
20   Bakersfield Sub-Office" because "any habeas relief ordered by the Court would
21   necessarily be directed to the San Francisco office").  This Court held in its TRO order that
22   FOD Becerra is the proper respondent; the Government fails to introduce any new factual
23   evidence now to suggest otherwise.

24   The Government instead reads Sarvia v. Sessions, 280 F. Supp. 3d 1168, 1187
25   (N.D. Cal. 2017) to hold that low-level field specialists are better suited as respondents
26   than director-level officials because they exercise more immediate control over private
27   facilities.  See Return at 9.  This reading of Sarvia is erroneous.  Sarvia involved a dispute
28   between whether a federal official or a Chief Probation Officer, who acted as the warden

United States District Court
Northern District of California

1  of a private facility, should be the proper respondent. Sarvia, 280 F. Supp. 3d at 1185.
2  Because federal officials were better suited to defend federal interests, the court held that
3  the proper respondent was the "federal official tasked with ensuring Yolo County complies
4  with the requirement of its contract." Id. at 1186. Whether the respondent was a "low-
5  level" or a "director-level" official was not dispositive, let alone a consideration in the
6  opinion.
7        Even assuming for a moment that it was a consideration, the Government has it
8  backwards—the federal official in Sarvia is more like a "director-level official" than a
9  low-level one. Resembling the federal official in Sarvia, FOD Becerra holds management
10 responsibilities, including ensuring compliance from all ERO. AAFOD Gonzalez's
11 declaration does not persuade the Court that she is the "federal official most directly
12 responsible for overseeing" Golden State Annex. See Gonzalez Decl. ¶ 1 (declaring that
13 Gonzalez is "responsible for providing support" to DFOD Cruz and FOD Becerra "in
14 managing operations and procedures of enforcement and removal activity . . . which
15 includes but is not limited to providing oversight and supervision of" Golden State Annex).
16       Consequently, as it did in its TRO order, this Court stands with the courts in this
17 district that have held that FOD Becerra is the proper respondent. Gomez v. Becerra, No.
18 23-cv-03724-JCS, 2023 WL 6232236, at *6 (N.D. Cal. Sept. 25, 2023) ("Here, as in the
19 many other cases in which this Court has addressed the question, there is no dispute that
20 the San Francisco FOD is the person with primary authority over Petitioner's arrest and
21 detention."); I.E.S. v. Becerra, No. 23-CV-03783-BLF, 2023 WL 6317617, at *5 (N.D.
22 Cal. Sept. 27, 2023) ("The Court concurs with the approach of other courts in this district,
23 which have repeatedly held that lower-level ICE officials are not appropriate
24 respondents."). Therefore, this Court has jurisdiction over Pham's petition.

25 **III.  LEGAL STANDARD**
26       Federal district courts may grant writs of habeas corpus if the petitioner is "in
27 custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.
28 § 2241(c)(3). The proper vehicle through which to challenge the constitutionality of a

1  noncitizen's detention without bail is 28 U.S.C. § 2241. Demore v. Kim, 538 U.S. 510,
2  516–17 (2003). "A person need not be physically imprisoned to be in custody under the
3  statute; instead, habeas relief is available where the individual is subject to 'restraints not
4  shared by the public generally.'" Ortega v. Bonnar, 415 F. Supp.3d 963, 967–68 (N.D.
5  Cal. 2019) (quoting Jones v. Cunningham, 371 U.S. 236, 240 (1963)). Proper remedies for
6  habeas petitions include declaratory and injunctive relief. See id. at 970 (enjoining ICE
7  from re-arresting petitioner without a bond hearing); see also Perera v. Jennings, 598 F.
8  Supp. 3d 736, 747 (enjoining ICE from re-arresting petitioner without a bond hearing).

## IV.  DISCUSSION

Pham argues that detention under § 1226(c) without a bond hearing violates the due process clause of the Fifth Amendment, as applied to him. The Government argues that Pham does not have a protected liberty interest under the due process clause of the Fifth Amendment. Upon analysis of the Mathews factors, the Court concludes that Pham succeeds on his due process claim. Mathews v. Eldrige, 424 U.S. 319 (1976).

### A.  Due Process Analysis

#### 1.  Legal Framework

8 U.S.C. § 1226 sets forth whether the government may detain or release noncitizens during removal proceedings. Under the "default rule" of § 1226(a), the government "may release" or "may continue to detain" an arrested noncitizen "pending a decision" on their removal. 8 U.S.C. § 1226(a); see also Nielsen v. Preap, 139 S. Ct. 954, 956 (2019) ("Aliens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided."). Section 1226(c), titled "Detention of Criminal Aliens," instructs that the government "shall take into custody any alien" who has committed various types of criminal offenses "when the alien is released."[4]

---

[4] The parties do not dispute that Pham's conviction is an "aggravated felony" rendering him deportable under 8 U.S.C. 1227(a)(2)(A)(iii) and that Pham was previously detained subject to § 1226(c), not § 1226(a). See also 8 U.S.C. § 1101(a)(43)(A) (defining "aggravated felony" as "murder, rape, or sexual abuse of a minor"). Accordingly, the Court operates on the assumption

9

The Supreme Court has addressed the meaning, application, and constitutionality of § 1226(c) piecemeal. In <u>Demore v. Kim</u>, the Court held that § 1226(c) was constitutional on its face. 538 U.S. 510, 530 (2003); <u>but see id.</u> at 532–33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); <u>see also</u> <u>Jennings v. Rodriguez</u>, 138 S. Ct. 830, 847 (2018) (holding that the text of 1226(c) does not allow for the imposition of periodic bond hearings during detention pending a removal decision). In <u>Nielsen v. Preap</u>, the Court held that § 1226(c) does not require bond hearings even for noncitizens (like Pham) whose removal proceedings (and detention) commenced long after their release from criminal custody. 139 S. Ct. at 959. But while declining to apply the canon of constitutional avoidance to its statutory holding, the <u>Preap</u> Court explicitly reserved the type of as-applied constitutional challenge that Pham now brings. <u>See</u> <u>Preap</u>, 139 S. Ct. at 972 ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

The due process protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001). Detention violates due process absent "adequate procedural protections" or "special justification[s]" sufficient to outweigh the "'constitutionally protected interest in avoiding physical restraint.'" <u>Zadvydas</u>, 533 U.S. at 690 (quoting <u>Kansas v. Hendricks</u>, 521 U.S. 346, 356 (1997)).

Courts apply three factors from <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976), to determine what the "specific dictates of due process" require in a particular case: "First, the private interest that will be affected by the official action; second, the risk of an

---

that Pham has no statutory entitlement to a bond hearing. <u>See</u> <u>Preap</u>, 139 S. Ct. at 960, 968.

1  erroneous deprivation of such interest through the procedures used, and the probable value,
2  if any, of additional or substitute procedural safeguards; and finally, the Government's
3  interest, including the function involved and the fiscal and administrative burdens that the
4  additional or substitute procedural requirement would entail." 424 U.S. at 335.

### 2. Mathews Factors

#### a. Liberty Interest

Pham argues that he has a liberty interest in freedom from ICE detention and that this liberty interest is heightened by his exemplary conduct during the period between his release from custody and ICE detention. See Traverse at 7. As it did in opposing Pham's motion for a TRO, the Government argues that Pham does not have a protected liberty interest because the lapse of time between Pham's release from state custody and arrest by ICE is insufficient to establish a protected liberty interest. See Return at 13.

The Government's argument is based on a faulty premise. Pham's liberty interest does not depend on the Government's diligence, or lack thereof, in detaining him. See Zadvydas, 533 U.S. at 335. Rather, Pham has an independent liberty interest in being free from physical restraint.[5] As Judge Freeman held in Perera, "the main private interest at stake in the instant matter is Perera's '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint.'" Perera, 2021 WL 2400981, at *4 (quoting Zadvydas, 533 U.S. at 690). This interest persists no matter the length of his detention. See id. (quoting Rajnish v. Jennings, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020)). The Court incorporates its analysis from its TRO order, which holds that Pham has a protected liberty interest that would be affected by the deprivation of a bond hearing. This factor is weighs in Pham's favor.

---

[5] The Government spends a significant time in their brief attempting to distinguish this case from Perera, 598 F. Supp. 3d. 736. The Government argues that unlike in Perera wherein ICE took six years to detain the noncitizen after notification of release, Pham's release from custody did not come to ICE's attention until September 2022, approximately four months before ICE detained Pham. See Return at 15. Putting aside that the record is insufficient to establish this timeline, this Court and for that matter, the Perera court, rejected that a detainee's liberty interest depended on the length of time the federal government knew of the conviction and failed to initiate removal proceedings. See TRO at 11; see Perera, 2021 WL 2400891, at *4.

11

### b. Bond Hearing

Having found that Pham has a liberty interest, we assess the other Mathews factors—the risk of erroneous deprivation, and the Government's interest—to determine whether Pham is entitled to a bond hearing. Mathews, 424 U.S. at 335. In accord with Judge Freeman's conclusion in Perera, the other Mathews factors "unquestionably weigh in favor of" Pham. Perera, 20201 WL 2400981, at *4.

The risk of erroneous deprivation is significant. The Government, in a conclusory fashion, claims that Pham's prior criminal conviction "dilutes" his private interest. But the record shows that Pham does not pose a danger to society or present a flight risk—the very justification for mandatory detention. This is further elucidated by the fact that an IJ released Pham on bond following this Court's TRO order. See Stipulation 22. Pham was released on April 5, 2023, more than nine months ago, and Pham has not been convicted of a crime since March 2015, almost nine years ago. Pham is employed and married with two toddlers. Pham. Decl. ¶ 6. He has served his sentence; completed post-conviction programs, including an alcohol-abuse program; and is by all accounts, a law-abiding citizen. Given this context, the risk of erroneous deprivation is high.[6]

Finally, the government's interest in detention absent a bond hearing is low. The government certainly has an interest in "efficient administration of the immigration laws" and the administrative burdens inherent in additional procedural protections. Landon v. Plasencia, 459 U.S. 21, 34 (1982). But "the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with [a] bond hearing, not whether the government may continue to detain him" at all. Lopez Reyes v. Bonnar, 362 F. Supp. 3d 765, 777 (N.D. Cal. 2019). "Requiring the government to provide [Pham] with a bond hearing does not meaningfully undermine the government's interest in detaining non-

---

[6] The government's argument that there is no risk of erroneous deprivation because Pham is subject to mandatory detention without bond under § 1226(c) is circular. See Return at 20. Preap explicitly left open as-applied due process challenges to mandatory detention under § 1226(c). Preap, 139 S. Ct. at 972. It follows that successful due process challenges to mandatory detention would require additional process—i.e., more than none—such as a bond hearing where the government must show that continued detention is justified.

12

1    citizens who pose a danger to the community or are a flight risk." Perera, 2021 WL
2    2400981, at *5.
3        Accordingly, balancing the Mathews factors, the Court finds that detention without
4    a bond hearing violates Pham's right to due process. On that basis, the Court GRANTS
5    Pham's petition for habeas corpus. The Court next considers whether Pham or the
6    Government should carry the burden of proof at the bond hearing.

### B.   Burden of Proof at Bond Hearing

Pham asks this Court to affirm its TRO holding that the Government shall bear the burden of proof with clear and convincing evidence at the bond hearing. See Traverse at 12; TRO at 14. The Government argues that Pham should bear the burden of proof because similar statutory provisions place the burden on the noncitizen, and the Supreme Court has never required the government to bear the burden of proof. The Government also reads Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011) to place the burden of proof on the detainee. See Return at 23.

As to the Government's reliance on the statutory burden that applies to bond hearings under 8 U.S.C. § 1226(c)(2) and provisions in the Bail Reform Act that apply to some pretrial detainees, these statutes are inapposite to the case at bar. It is due process, not a detention statute or an implementing regulation, that is the governing standard that applies to Pham's bond hearing. And while it is true that the Supreme Court has not previously placed the burden of proof on the government at a bond hearing, it is also true that the Supreme Court has never addressed the issue of what due process requires at a constitutionally required, remedial bond hearing.

Moreover, Judge Freeman in the Northern District of California found that the Government bore the burden with clear and convincing evidence in a similar case noting:

> In Singh, the Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." 638 F.3d at 1203. While the Ninth Circuit was considering the burden of proof in the context of a Casas hearing—held after a noncitizen has faced "prolonged detention while their petitions for review of their removal orders are pending"—the Court finds that the

13

Ninth Circuit's reasoning applies equally here, contrary to Respondents' arguments. It would be "improper to ask [I.E.S.] to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant." Id. at 1203–04 (quoting Addington v. Texas, 441 U.S. 418, 427 (1979)). To the extent that Rodriguez Diaz might have called into question Singh's holding as it applies to § 1226(c), Rodriguez Diaz was limited to § 1226(a) cases and specifically declined to consider whether Singh remains good law in § 1226(c) cases. See Rodriguez-Diaz, 53 F.4th at 1202 & n.4. Finally, courts in this district confronted with similar issues have continued to place the burden of proof on the government even after Rodriguez Diaz. See, e.g., Martinez Leiva, 2023 WL 3688097, at *9; Pham, 2023 WL 2744397, at *7; Perera, 598 F.Supp.3d at 746–47.

Becerra, 2023 WL 6317617, at *10.

The Court follows the consensus of the courts in this district and this Court's previous TRO holding that the Government shall bear the burden in a constitutionally mandated bond hearing. See, e.g., Doe v. Garland, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding that the government shall bear the burden in a constitutionally required bond hearing in the § 1226(c) context post-Rodriguez-Diaz).

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Pham's petition for writ of habeas corpus. Defendants are permanently enjoined from detaining Pham pursuant to 8 U.S.C. § 1226(c) based on criminal convictions that pre-date the Court's order, for more than five days without a bond hearing at which the Government bears the burden of justifying Pham's detention by clear and convincing evidence.

**IT IS SO ORDERED.**

Dated: February 15, 2024

_____
CHARLES R. BREYER
United States District Judge